UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**MUSIE W. HAILE**,                                    Case No. 3:13-cv-00053-KI

                  Plaintiff,                    OPINION AND ORDER

    v.

**HICKORY SPRINGS
MANUFACTURING COMPANY, a
North Carolina company;
INTERNATIONAL FOAM SUPPLY,
INC., a California corporation; SEA
MASTER LOGISTICS, INC., a California
corporation; INTERNATIONAL
CONTAINER TERMINAL SERVICES,
INC., a foreign corporation in the
Philippines; SHENZHEN ZHONGFU
TRADING COMPANY, a foreign
corporation in China; JOHN DOE 1;
JOHN DOE 2; JOHN DOE 3; JOHN DOE
4; and JOHN DOE 5**,

                  Defendants.

Page 1 - OPINION AND ORDER

**HICKORY SPRINGS MANUFACTURING COMPANY**, a North Carolina company,

Third-Party Plaintiff,

v.

**PORTLAND CONTAINER REPAIR CORPORATION**, an Oregon corporation,

Third-Party Defendant.

Richard A. Mann
Joseph M. Mabe
Brownstein Rask
1200 S.W. Main Street
Portland, OR 97205-2040

Attorneys for Plaintiff

Jeffrey W. Hansen
Joseph A. Rohner IV
Smith Freed & Eberhard P.C.
111 SW Fifth Avenue, Suite 4300
Portland, OR 97204

Attorneys for Defendant

KING, Judge:

In this diversity action, plaintiff Musie Haile brings a complaint for an injury he sustained while attempting to deliver an intermodal container packed with scrap foam to the property of defendant Hickory Springs Manufacturing Company ("Hickory"). When plaintiff opened the container, two pallets of cargo, weighing approximately 600 pounds each, knocked plaintiff to the ground.

Plaintiff alleges premises liability, the sole surviving claim, against Hickory. For the following reasons, I grant Hickory's Motion for Summary Judgment and dismiss this case.

## BACKGROUND

Plaintiff alleges he was Hickory's business invitee. He alleges Hickory owed a duty to exercise reasonable care to protect plaintiff from the unreasonable risk of dangerous and defective conditions posed by overseas shipments of containers, which it regularly received, and that it knew or should have known the cargo was not properly secured inside the container. He alleges Hickory failed to warn delivery drivers about unsecured cargo, and failed to implement protective measures to avoid injuring delivery drivers.

Plaintiff transported cargo as an independent contractor for Portland Container. Over the course of his five-year working relationship with Portland Container, plaintiff had handled 2,431 loads–including 19 for Hickory. He had only delivered foam and nothing else to Hickory, although he often did not know what he was carrying until he opened the container upon arrival at the premises. The U.S. Department of Transportation licensed plaintiff as an interstate driver who could carry general freight and intermodal shipping containers.

Plaintiff reported the events from April 13, 2011, the day of his injury. He obtained the intermodal container and chassis for the load from Terminal 6 at the Port of Portland, then drove down Marine Drive, without making any stops, until he arrived at Hickory's property. He did not break the seal or open the doors prior to arriving at Hickory's premises. When he checked into the receiving office, a Hickory employee, Steve Hartwell, told plaintiff to cut the shipping seal and put the shipping container at a specific loading dock bay. Plaintiff does not remember receiving any other instruction or warning. He then drove around the back of the building.

Page 3 - OPINION AND ORDER

Plaintiff began backing up to the cargo door, stopped, got out, and walked toward the container's

doors.  Because he understood Hickory wanted the container open and available for its

employees to unload, plaintiff cut the seal on the container.  Plaintiff opened the rear right-hand

door of the container, swung the right-hand door open and secured it to the side of the container.

Plaintiff was able to see inside the shipping container and saw the foam.  His deposition

testimony gave little detail about the position of the foam, however.

> Q.  Did you stick your head into the container to see if there was anything pressing against the left-hand door?
>
> A.  There's no room to go in to see.
>
> Q.  Okay.  Why not?
>
> A.  So the load and the door was very close.
>
> Q.  On the right-hand side?
>
> A.  Yes.
>
> Q.  Would it have been possible for you to stand right next to the load and see the inside of the left-hand door?
>
> A.  No.

Haile Dep. 59:23-60:9.

In the process of opening the second container door (the left-hand side), plaintiff lifted the

locking device.  The door sprang open, knocked plaintiff to the ground and two pallets of foam

weighing 600 pounds each fell out of the container.  Plaintiff reports, "Hickory Springs did not

offer to help me open the container doors with any type of mechanical equipment, such as a

forklift."  Pl.'s Decl. ¶ 12.

Because the container doors have no windows, the driver cannot view the inside of the container without breaking the seal and opening the doors. In order to open the container doors, a person must stand in front of the container door to release the latches allowing the door to open. The driver customarily breaks the seal and opens the container, after delivering a sealed load, but the right to break the seal and the manner in which it is broken is for the customer to exercise. Plaintiff opened the rear cargo doors approximately 75% of the time he made a delivery.

Hickory's employees, Steve Hartwell and Kevin Trafton, have seen cargo shift, including "baled springs, carpet pad, and foam packages." Hartwell Dep. 22:4-5. When cargo shifts, most of the time the cargo is simply not in its place in the trailer. A couple of times cargo has fallen out. Hartwell would often warn drivers to be careful opening the container doors. In the 27 years Trafton worked for Hickory he had never seen a bale of scrap foam fall from a container.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." Nicholson v. Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

Hickory relies on two alternative theories in arguing for summary judgment.  First, no one else but plaintiff, as a federally regulated motor carrier, was responsible for the safety and security of his cargo.  Second, as a matter of law, Hickory cannot be liable to plaintiff under Oregon's premises liability law.  In short, Hickory contends there are only three potentially liable parties:  the company that loaded the container (Shenzhen Zhongfu Trading Co., which has not been served); the company for whom plaintiff transported cargo (Portland Container, which has not been sued); and plaintiff himself.  It argues a customer (i.e. Hickory) receiving a loaded shipping container cannot be liable to the truck driver (i.e., plaintiff) who injures himself in a way unrelated to any condition of the property.

I.    Federal Commercial Driver Regulations

Hickory argues federal law makes plaintiff–as a federal motor carrier with an assigned USDOT number and Motor Carrier Number–responsible for the safety of his cargo.  Plaintiff was required to comply with the federal regulations applicable to motor carriers.  Those regulations include a requirement that cargo be "properly distributed and adequately secured" prior to "operat[ing] a commercial motor vehicle[.]"  49 C.F.R. § 392.9(a)(1).  Specifically, "[c]argo must be firmly immobilized or secured on or within a vehicle by structures of adequate strength, dunnage or dunnage bags, shoring bar, tiedowns or a combination of these."  49 C.F.R. § 393.106(b).  Plaintiff was required to secure the cargo before he drove, inspect the cargo to ensure it "cannot shift on or within," and reexamine the cargo during the course of transportation. 49 C.F.R. §§ 392.9(b)(1), 392.9(b)(2), and 392.9(b)(3).

I am not persuaded.  Even if the safety regulations applied in this context–a dispute
between a carrier and a receiver, as opposed to a carrier and a shipper–the inspection
responsibility is inapplicable to a driver of a container (1) "who has been ordered not to open it to
inspect its cargo" and inapplicable to the driver of a container (2) "that has been loaded in a
manner that makes inspection of its cargo impracticable."  49 C.F.R. § 392(b)(4).  Here, the
container was sealed at the time plaintiff picked it up; he had no opportunity or authority to
inspect the contents of the container prior to driving it to Hickory's premises.  This makes
plaintiff's situation easily distinguishable from the facts of the cases on which Hickory relies.
Aragon v. Wal-Mart Stores E., LP, 735 F.3d 807, 811 (8th Cir. 2010) (driver had opportunity to
inspect the cargo "and assure himself that it was properly distributed and adequately secured"
and he accepted the unsecured cargo); White v. Dietrich Metal Framing, 1:06-cv-554, 2007 WL
7049797, at *7 (E.D. Tex. July 5, 2007) (trucker raised concerns about height of load prior to
transporting it; loading defect was apparent); Decker v. New England Pub. Warehouse, Inc., 749
A.2d 762, 767 (Maine 2000) (carrier failed to inspect load prior to accepting it; inspection would
have revealed improper loading).

Hickory asserts the exceptions do not apply because plaintiff had not completed his
delivery.  The regulations do not use the word "delivery."  Rather, the inspection obligation is
implicated before a driver "operate[s] a commercial motor vehicle," before a driver "drives that
commercial motor vehicle," and "during the course of transportation."  49 C.F.R. §§ 392.9(a),
392.9(b)(1) and (2).  In other words, the regulations related to inspection direct that the driver's
obligation is implicated "*before* he/she drives that commercial motor vehicle" and at times when
the driver can add devices to cargo *before* cargo shifts or falls, not after the cargo has already

Page 7 - OPINION AND ORDER

arrived at its destination.  See 49 C.F.R. § 392.9(b); see also 49 C.F.R. § 393.100 (cargo must be

secured "when transporting cargo on public roads" and cargo must be secured to avoid affecting

"vehicle's stability and manueverability").  Courts dispute whether unloading is appropriately

included in the term "operating" as it appears in the federal regulations.  Compare Pouliot v. Paul

Arpin Van Lines, Inc., 292 F. Supp. 2d 374, 380-81 (D. Conn. 2003) (in process of interpreting

"employee" in regulations, concluded "operating" means "driving the vehicle" not unloading it)

with Smart v. Am. Welding and Tank Co., Inc., 826 A.2d 570, 574 (N.H. 2003) (no reason to

distinguish duty imposed on carriers while transporting cargo versus unloading it).

        In any event, even if plaintiff could be said to have been "operating" his commercial

motor vehicle at the time he unsealed the container and opened the first container door, thereby

arguably triggering his obligation to inspect, a factual question remains as to the practicability of

seeing inside the container.  When plaintiff approached the back of the door to unseal it, he had

no idea what was inside the container.  It is true that once plaintiff successfully opened the first

door, he possibly could have assessed the safety of opening the second door.  However, a

reasonable juror could conclude plaintiff was unable to inspect the state of the cargo from where

he stood.  See Haile Dep. 59:23-60:9.  Accordingly, Hickory is not entitled to summary judgment

on this basis.

II.    Oregon Premises Liability Law

        Hickory alternatively argues that plaintiff's premises liability claim fails as a matter of

law.  A possessor of land must make its premises reasonably safe for an invitee's visit, exercise

reasonable care to discover conditions that create an unreasonable risk of harm, and must either

eliminate the condition or warn invitees to avoid the dangerous condition.  Woolston v. Wells,

297 Or. 548, 557-58, 687 P.2d 144 (1984).  The duties are the same whether the danger is posed

by a condition of the land or from an activity that creates a hazardous condition.  Vandeveere-

Pratt v. Portland Habitation Cntr., Inc., 242 Or. App. 550, 560, 259 P.3d 9 (2011).

Hickory highlights plaintiff's atypical premises liability theory.  The case does not

involve dangerous stairs, an automatic sliding door, a wet or oily surface, a crack in a sidewalk,

or a low-hanging bar, or any other kind of condition or structure *on Hickory's land*.  Plaintiff

argues the condition on Hickory's land "was the unsecured pallets of scrap foam in the container

that Hickory Springs ordered."  Pl.'s Mem. in Opp. 18.

When interpreting state law, decisions of the state's highest court bind federal courts.

Ariz. Elec. Power Co-op., Inc. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995).[1]  No Oregon

precedent supports plaintiff's unusual premises liability claim.  Possessors of property in Oregon

have been held liable to injured deliverers only when the condition of the land or actions of the

defendant caused the injury.  Woolston, 297 Or. 548 (television repairman injured when fell on

stairway while delivering television); Cox v. Al Peirce Lumber Co., 239 Or. 546, 398 P.2d 746

(log truck driver injured when helping another driver unload logs with defendant's machine);

Fisher v. Morris P. Kirk & Son, Inc., 219 Or. 402, 411, 347 P.2d 851 (1959) ("The mere fact that

an accident happened was not sufficient to show that bumpers would have prevented it, or that

lack of bumpers across the west end of the platform was negligence or lack of reasonable care on

---

[1] Somewhat unhelpfully, Hickory relies on a case from Utah holding that premises
liability "does not extend to a hazard created by the invitee."  English v. Kienkem, 848 P.2d 153,
157 (Utah 1993).  English is distinguishable on its facts as the plaintiff in that case created the
hazard that injured him.  Here, plaintiff simply delivered a sealed container filled with the scrap
foam that Hickory had ordered.  Plaintiff neither loaded the container nor had the opportunity to
inspect it before he transported it to Hickory's premises.

the part of the defendant;" no duty to warn plaintiff), overruled by Dawson v. Payless for Drugs, 248 Or. 334, 433 P.2d 1019 (1967) (plaintiff's knowledge of danger does not relieve defendant of duty to plaintiff). No Oregon case extends premises liability as far as plaintiff seeks to push it.

Plaintiff appears to recognize the lack of Oregon authority and instead cites a case from a Texas Appeals court. In McWilliams v. Snap-Pac Corporation, 476 S.W.2d 941 (Tex. App. 1972), a truck driver transported petroleum products to the buyer. While unloading the petroleum products into the buyer's storage tank, an explosion occurred which injured the driver. The driver sued the buyer on a failure to warn theory. Plaintiff relies on the court's statement that, "The danger lay in pumping a highly volatile substance in the tank that would likely produce excessive fumes. [The driver] did not know the substance was highly volatile. We cannot say that the danger was open and obvious and therefore [the buyer] had no duty to warn of it." 476 S.W.2d at 948. Plaintiff argues Hickory Springs, like the buyer in McWilliams, knew the cargo could be unsecured and dangerous and plaintiff, like the driver in McWilliams, did not.

Whether scrap foam is as dangerous as the petroleum product being delivered in McWilliams is beside the point. The basis for premises liability in McWilliams hinged on the buyer's obligation to place a lid on the manhole of the storage tank, or install a vent on the storage tank, to reduce the vapors that caused the explosion. Thus, "[t]he danger lay in pumping a highly volatile substance in the tank that would likely produce excessive fumes." Id. Indeed, the buyer knew previous deliverymen had complained about the fumes, told the deliverymen the problem would be remedied, but failed to install the proper equipment or warn that no changes to the storage tank had been made.

Page 10 - OPINION AND ORDER

In short, the issue of whether an owner has complied with the duty of care is normally a jury question. However, the court may make that determination as a matter of law: "[i]f a reasonable trier of fact could not impose liability for failure to comply with that standard of care, judgment must be granted to the defendant as a matter of law." Glorioso v. Ness, 191 Or. App. 637, 643 n.7, 83 P.3d 914 (2004). In other words, the court may determine whether a particular condition on the premises creates an unreasonable risk of harm for an invitee. Hagler v. Coastal Farm Holdings, Inc., 244 Or. App. 675, 681, 260 P.3d 764 (2011). Here, I conclude as a matter of law that no trier of fact could impose liability on Hickory for failing to meet its standard of care to plaintiff. See Fortney v. Crawford Door Sales Corp. of Oregon, 97 Or. App. 276, 775 P.2d 910 (1989) ("a defendant must have *some* responsible involvement with an event in order to be found negligent for its occurrence").

III.    Status of Remaining Parties

On March 7, 2013, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), plaintiff voluntarily dismissed International Container Terminal Services, Inc. On March 11, 2014, I granted the Motion for Judgment on the Pleadings filed by International Foam Supply, Inc., and I entered an order dismissing the company with prejudice and without costs or attorney fees. Plaintiff and Sea Master Logistics, Inc. stipulated to dismissal of Sea Master Logistics, Inc. with prejudice and without costs; the parties also stipulated to entry of a limited judgment under Federal Rule of Civil Procedure 54(b). I dismissed the third-party complaint against Portland Container Repair Corporation on June 9, 2014, but declined to enter a limited judgment at that time.

Plaintiff failed to properly serve Shenzhen Zhongfu Trading Company or John Does 1-5;

accordingly, I dismiss the claims against them.

### CONCLUSION

Based on the foregoing, I grant the Motion for Summary Judgment filed by Hickory

Springs Manufacturing Company [62].

IT IS SO ORDERED.

DATED this _____14th_____ day of November, 2014.


_/s/ Garr M. King_____
Garr M. King
United States District Judge